UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE RIVERSIDE PUBLISHING COMPANY,

    Plaintiff,

v.

MERCER PUBLISHING LLC, et al.,

    Defendants.

CASE NO. C11-1249RAJ

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the court on a motion (Dkt. # 6) for a temporary restraining order ("TRO") and preliminary injunction from Plaintiff The Riverside Publishing Company ("Riverside"). The court held a hearing yesterday, and has considered the parties' arguments as well as their briefs and documentary evidence. For the reasons stated below, the court DENIES the motion. The court addresses Riverside's motions relating to sealing documents (Dkt. ## 2, 4) at the conclusion of this order.

Because this order "grant[s] or refus[es] an interlocutory injunction," the court must make findings and fact and conclusions of law. Fed. R. Civ. P. 52(a)(2). The court includes its findings and conclusions in this order, which serves as a memorandum of the court's decision. Fed. R. Civ. P. 52(a)(1) (permitting findings and conclusions within "an opinion or a memorandum of decision"); *see also FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982) (noting that explicit factual findings are unnecessary).

ORDER – 1

## II. BACKGROUND

Riverside, a subsidiary of the Houghton-Mifflin publishing empire, publishes a standardized test known as the CogAT for children of primary school age. Schools across the country administer the CogAT for a variety of purposes, often to screen children for admittance into programs for gifted students. The CogAT comes in different versions targeting different age groups and skill levels.

Rachel Hubbard owns Defendant Mercer Publishing LLC ("Mercer"). Mercer publishes materials for parents to help children prepare for the CogAT. Those materials are available in book format and online. They include complete practice tests as well as practice questions that are not in complete-test format. Although Ms. Hubbard's husband is also a principal in Mercer, she operates the business by herself from her home.

As early as 2007, Riverside took the position that Mercer's practice exams were too similar to actual CogAT exams. A Riverside attorney demanded that Mercer cease publication of its exams. Nothing came of that initial dispute. Mercer continued to publish its materials.

In June 2009, Riverside sued Mercer for copyright infringement. The case was assigned to the Honorable Robert S. Lasnik of this District. No. C09-796RSL. Judge Lasnik never considered the merits of that dispute. The parties entered early mediation, and resolved the dispute in a November 2009 Settlement Agreement. The court will examine the Settlement Agreement in detail in its later analysis. For now, it suffices to note that the Agreement set forth a process wherein Mercer would submit its existing CogAT materials for Riverside to review, Riverside could object to questions it believed were too similar to its own, and a neutral would ultimately resolve any disputes. The Agreement also contemplated that if Mercer developed new CogAT practice tests or questions, it would submit those materials to Riverside for a similar review process.

Shortly after executing the Settlement Agreement, Mercer submitted its then-existing materials to Riverside. Riverside objected to 47 questions out of thousands.

ORDER – 2

Although Mercer disagreed with Riverside's objections, it agreed to withdraw the questions rather than waste resources disputing the objections.

Riverside has been preparing a new version of the CogAT, known as the "Form 7" exam. Riverside only recently completed the Form 7 exam, and according to its counsel, it has just begun distributing the exam to schools. No student has taken a Form 7 exam. In preparation for the release of the exam, Riverside published several sample questions and provided public information about the format of the Form 7 exam.

Ms. Hubbard learned in April that the CogAT Form 7 was coming. She immediately began work preparing new study materials for Mercer. On June 10, she submitted thousands of practice questions to Riverside for review. The questions were not organized in practice exams, nor were they labeled to correspond to various versions of the CogAT. By number of pages, the submission Mercer made in June was smaller than the submission it made in November 2009. The format was different, however, because the 2009 submission included full practice exams in addition to questions that were not organized into exams.

On July 8, Riverside issued a response to the submission. Atkins Decl., Ex. E. It contended that the format of Mercer's submission did not comply with the Settlement Agreement, and that Riverside therefore had no obligation to comply with the Agreement's 30-day time limit for initial review of Mercer's materials. *Id.* at 1. Riverside nonetheless provided a few examples of questions that in its view demonstrated "the same type of unlawful copying that led Riverside to file suit." *Id.* at 2. Four days later, Mercer advised Riverside that Riverside had waived its opportunity to review the questions, and that Mercer would proceed with publication of new materials. Atkins Decl., Ex. F.

On July 19, Mercer issued public notice that it would release new CogAT Form 7 practice exams in electronic format on August 1, and in paper format on August 31. Barrett Decl., Ex. A.

ORDER – 3

Riverside filed this lawsuit on July 28. Its sole claims are that Mercer breached the Settlement Agreement and the implied covenant of good faith and fair dealing. The same day, Riverside filed a motion for a TRO and preliminary injunction. It provided Mercer's counsel with notice of the motion by email. The court originally scheduled a hearing on the motion for July 29, with the intent of deciding the motion in advance of Mercer's August 1 publication date. Rather than rushing into a hearing, Mercer agreed to delay publication pending yesterday's hearing and the court's decision.

The court now turns to Riverside's motion for injunctive relief.

### III. ANALYSIS

#### A. Injunction Standard

Riverside does not differentiate between its request for TRO and its request for a preliminary injunction. Regardless, the applicable standards are "essentially the same." *Beaty v. Brewer*, ___ F.3d ___, 2011 U.S. App. LEXIS 11391, at *8 (9th Cir. May 25, 2011); *see also ProtectMarriage.com - Yes on 8 v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that older standards were "substantially identical"). Where a court issues a TRO without notice to the adverse party, additional requirements apply. Fed. R. Civ. P. 65(b)(1). In this case, although Mercer initially received only informal notice, and the parties briefed the motions on a compressed schedule, Mercer has not contended that it received inadequate notice or an inadequate opportunity to present its opposition. Accordingly, the court hereafter treats Riverside's motion as a motion for preliminary injunction.[1]

---

[1] The Settlement Agreement requires "questions relating to its validity, interpretation, performance, and inducement" to be decided in binding arbitration. Agreement ¶ 9. The same clause provides, however, that "[n]otwithstanding the previous sentence . . . Riverside may seek injunctive relief . . . by filing suit in any Washington court of competent jurisdiction." *Id.* The court assumes that this clause gives it plenary authority to resolve disputes raised in the motion before it. No party has argued otherwise.

ORDER – 4

The Ninth Circuit retooled its long-enduring standard for preliminary injunctive relief in the wake of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The former Ninth Circuit standard included a sliding scale on which a movant could compensate for a lesser showing of harm by showing a correspondingly greater chance of success on the merits, and vice versa:

> Under the "traditional" criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*NRDC v. Winter*, 518 F.3d 658, 677 (9th Cir. 2008) (citation omitted). In *Winter*, the Supreme Court rejected the Ninth Circuit standard to the extent that it made injunctive relief available on a showing of a mere possibility of irreparable harm. 555 U.S. at 22. Some subsequent Ninth Circuit panels used broad language about the effect of *Winter* on the alternative standard for injunctive relief. *See*, *e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (noting that "[t]o the extent that our cases have suggested a lesser standard [than the one established in *Winter*], they are no longer controlling, or even viable.") (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)). The panel in *Alliance for the Wild Rockies ("Alliance") v. Cottrell* took a narrow view of *Winter*. 632 F.3d 1127 (9th Cir. 2011). After reviewing the post-*Winter* landscape in the Ninth Circuit and in other circuits with sliding-scale injunction standards, *id.* at 1131-34, the *Alliance* panel "conclude[d] that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*." *Id.* at 1134. The "serious questions version of the sliding scale test" requires the movant to demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.*

ORDER – 5

at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). The *Alliance* panel explained that the "serious questions" test survives *Winter*. *Id.* at 1135 ("[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest.").

This court accordingly applies the following test for a preliminary injunction, consistent with *Winter* and *Alliance*. The court may issue a preliminary injunction where a party establishes (1) a likelihood of success on the merits, that (2) it is likely to suffer irreparable harm in the absence of preliminary relief, that (3) the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Id.* at 1131; *Winter*, 555 U.S. at 20. A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance*, 632 F.3d at 1135.

**B.  Riverside Has, At Best, a Modest Likelihood of Success on the Merits of Its Claim for Breach of the Settlement Agreement.**

The sole basis on which Riverside seeks an injunction is its claim that Mercer breached the Settlement Agreement. That claim depends initially on Riverside's assertion that Mercer's June 10 submission did not comply with the Agreement. The court now examines the Agreement in detail.

At the time the parties entered the Agreement, Mercer had already published a variety of CogAT preparation materials, including complete practice exams. The first numbered paragraph of the Agreement addresses those materials.

> 1.  **Mercer's and Hubbard's Revisions to Existing Practice Exams.** Mercer and Hubbard will revise all of their practice exams and other material intended to help persons take Riverside's CogAT Exams that by the Effective Date have been published and/or made available through any source . . . .

ORDER – 6

Although the first sentence of the paragraph refers to "practice exams *and other material*" the remainder of the paragraph ignores "other material."  It requires as follows:

> a. Within 5 business days, Mercer and Hubbard will provide Riverside with a complete full-text copy set of Mercer's Existing Practice Exams free of charge.  Mercer's Existing Practice Exams will be subject to the Nondisclosure Agreement attached hereto . . . .

The Agreement then obligates Riverside to raise objections to the submitted material within 30 days:

> b. Within 30 days after receiving Mercer's and Hubbard's notice described in subpart (a) of this Paragraph 1, Riverside will review Mercer's Existing Practice Exams and notify Mercer about any questions and/or answers that Riverside in good faith believes infringes its copyrights, and propose revisions to same.

The remainder of paragraph 1 sets forth a process by which Mercer could accept or dispute Riverside's objections, culminating if necessary in the selection of a neutral to resolve any disputes.  Agreement ¶¶ 1(c)-(g).

The Agreement also includes a clause addressing future practice exams:

> 2. **Mercer's and Hubbard's Future Practice Exams.**  Mercer and Hubbard will not market, advertise, sell, distribute, publish, reproduce, disseminate, or offer for sale any practice exams or other material intended to prepare persons to take the CogAT that by the Effective Date have not been published or made available through any source without first completing the process set forth in subparts (a) through (g) of Paragraph 1 of this Agreement.

The crux of Riverside's argument is that Mercer will breach the Agreement if it publishes new practice exams, because Mercer breached paragraph (1)(a) of the agreement by not submitting complete practice exams for Riverside's review.  Riverside interprets paragraph 1(a)'s requirement that Mercer provide a "complete, full-text copy set of Mercer's *Existing* Practice Exams" to require Mercer to submit a complete, full-text copy of any *future* practice exam as well.

ORDER – 7

Mercer interprets paragraph 1(a) to require a "complete, full-text copy set" only for the practice exams that existed when the parties entered the Settlement Agreement. Mercer contends that future practice exams need not be submitted in "complete, full text" form, provided that it submits the questions that will comprise the practice exams to Riverside for review. In Mercer's view, it complied with the Settlement Agreement and Riverside waived any objection to its new practice questions by failing to provide objections to specific questions within 30 days.

In resolving the parties' competing interpretations of the Settlement Agreement, the court relies on Washington contract law. The parties selected Washington law in the Settlement Agreement (¶ 9), and no party has suggested the application of any other body of law. In Washington, contract interpretation is a question of law. *Tanner Elec. Coop. v. Puget Sound Power & Light*, 911 P.2d 1301, 1310 (Wash. 1996). Where interpretation "depend[s] on the use of extrinsic evidence," or the extrinsic evidence admits more than one "reasonable inference," the court cannot interpret the contract as a purely legal matter. *Id.* These limitations, which arose from the decision in *Berg v. Hudesman*, 801 P.2d 222 (Wash. 1990), have engendered "much confusion" over a court's role in contract interpretation. *Hearst Commc'ns., Inc. v. Seattle Times Co.*, 115 P.3d 262, 266 (Wash. 2005). In *Hearst*, the Washington Supreme Court clarified that extrinsic evidence applies only "'to determine the meaning of *specific words and terms used*' and not to 'show an intention independent of the instrument' or to 'vary, contradict, or modify the written word.'" *Id.* at 267 (quoting *Hollis v. Garwall, Inc.*, 974 P.2d 836, 843 (Wash. 1999)) (emphasis in *Hearst*). Absent extrinsic evidence pertaining to a specific term, the court must "give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* (directing courts to interpret "what was written" rather than "what was intended to be written").

Applying these principles, it is apparent that the Agreement on its face is not as clear as Riverside suggests. Even as to material that Mercer had published before

ORDER – 8

November 2009, the Agreement is murky. Although it announces its intent to require Mercer to "revise all of [its] practice exams and other material," its detailed instructions for the revision process make no mention of "other material." Instead, it requires only the submission of "Existing Practice Exams." Interpreting the Agreement strictly, Mercer might well have argued that it needed to submit *only* its Existing Practice Exams. That interpretation would have relieved Mercer of a substantial burden, because the record reflects that in addition to full exams, Mercer had also published a larger number of questions in an online database, and that those questions were not organized into exams. Justus Decl. ¶ 6 & Ex. E (comparing quantity of unorganized questions in November 2009 submission with quantity of practice exam questions). Riverside might have objected to this interpretation, but to do so it would have had to argue that "Existing Practice Exams" actually meant "not only existing practice exams, but any other CogAT sample questions that you have published." In the court's view, that is a reasonable interpretation, and likely the agreement the parties had in mind, but it is an interpretation that goes beyond the plain language of the Agreement.

The parties had no need in 2009 to hash out these alternative interpretations of the Settlement Agreement, because Mercer submitted not only its existing practice exams, but its existing published practice questions as well. Riverside raised no objection to the format of the submission.

The Agreement is murkier still as it applies to Mercer's publication of new material. Rather than spell out a process for review of new material, the Settlement Agreement merely requires that the parties "first complet[e] the process set forth in subparts (a) through (g) of Paragraph 1 of this Agreement." Agreement ¶ 2. Some language in those subparts makes no sense as applied to new material. For example, subpart (a) requires Mercer's initial submission "[w]ithin 5 business days." That makes sense as to materials existing in 2009, because it requires a submission within 5 business days of the entry of the Settlement Agreement. It is meaningless with respect to future

ORDER – 9

publication. Similarly, subparagraph (a) requires copies of Mercer's "Existing Practice Exams." It cannot mean this with respect to practice exams that did not exist at the time of the settlement. The court queries then, why the requirement that Mercer provide a "complete, full-text copy set" of its then-existing practice exams applies to future exams. Providing a "complete, full-text copy set" is easy for practice tests that have already been published, it is much more difficult for exams which do not exist. Whereas Mercer could do nothing about the labor it had invested in organizing its existing practice exams, it could avoid investing that labor in organizing future practice exams until it had assurance from Riverside that Riverside would not object to the questions Mercer planned to include.

Mercer's June 10 submission consisted of all the questions it intends to use in its upcoming publications, whether in practice exams or in other formats. There is no evidence or suggestion that the practice exams Mercer hopes to publish will use any questions other than the ones it submitted to Riverside on June 10. The evidence does not reveal any material difference between the format of the questions that Mercer submitted June 10 and the format of the individual database questions that constituted the majority of its November 2009 submission. Although there are more questions in the current submission than there were in the portion of the 2009 submission devoted to individual database questions, the 2009 submission contained more pages overall. Despite the greater volume, Riverside reviewed the 2009 submission within 30 days as the Settlement Agreement required. Moreover, Riverside did not complain about the format of the individual database questions from the November 2009 submission. It now insists that a similar format is unacceptable. Riverside complains that the current submission does not categorize each question by the version of the CogAT to which it applies. Riverside has not, however, offered any compelling evidence that the difference between the two formats imposes any particular burden. Indeed, at oral argument, counsel for Riverside revealed for the first time that Riverside declined to review

ORDER – 10

Mercer's June 10 submission for an extended period of time because it was employing its resources to prepare the Form 7 version of the CogAT for publication. In other words, the evidence suggests that any additional burden that Mercer's June 10 submission imposed was the result of Riverside's business priorities, not Mercer's allegedly improper formatting. The court cannot attribute that burden to Mercer.

Based on the language of the Settlement Agreement and the extrinsic evidence the parties have submitted, the court would interpret Paragraph 2 to require Mercer to submit any question it intends to use in its future publications (whether in a practice exam or other format) for review. The court would not adopt Riverside's interpretation, which would require that Mercer submit its full practice exams for Riverside's review.

Even if, however, the court were to interpret the Agreement as Riverside prefers, Riverside would be unlikely to prevail. Riverside would have to establish that Mercer's breach was material. The purpose of the Settlement Agreement was to ensure that Riverside had an opportunity to object to any Mercer question-and-answer that Riverside believed infringed its copyrights. Mercer's June 10 submission gave Riverside that opportunity. As the court has already found, Mercer has not convinced the court that the format of Mercer's submission made it appreciably more difficult to conduct that review. Accordingly, the court finds that it is likely that any breach by Mercer was not material.

For these reasons, the court concludes that Riverside, has, at best, a modest chance of success on the merits of its claim that Mercer breached the Settlement Agreement. The court now turns to the other components of the test for injunctive relief.

**C.     Riverside Has Not Proven It Will Suffer Irreparable Harm.**

Riverside offers three arguments to support its claim that it will suffer irreparable harm if the court does not enjoin Mercer's publication. It contends that it is entitled to the presumption of harm that arises in cases of copyright infringement, it points out that the Settlement Agreement contains a clause stating that any breach will cause irreparable

ORDER – 11

harm, and it attempts to show that Mercer's publication will harm Riverside's relationship with the school districts that are its customers.

As of yesterday, there is no presumption of harm arising in cases of copyright infringement in the Ninth Circuit. *Perfect 10, Inc. v. Google, Inc.*, No. 10-56316, slip op. 10119, 10128 (9th Cir. Aug. 3, 2011). Even if it could ignore this recent ruling, the court could not ignore that Riverside does not claim copyright infringement in this lawsuit. Even if it had, Riverside has offered no evidence that convinces the court that Mercer has violated its copyrights. The only evidence that Riverside offers is its July 8 letter to Mercer, in which it selected a handful of questions from Mercer's submission that allegedly showed "the same type of unlawful copying that led Riverside to file suit [in 2009]." Atkins Decl., Ex. E. Riverside falls well short of demonstrating copyright infringement based on the skimpy allegations of the letter. Indeed, the court would find that Mercer's questions are not substantially similar to Riverside's. *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) (explaining substantial similarity standard for copyright infringement).

The court gives little weight to the clause in the Settlement Agreement that pre-declares that any breach of the Agreement will result in irreparable harm.[2] Even before *Winter*, no controlling authority permitted the court to presume irreparable harm merely from the presence of such a clause. So far as the court is aware, the Ninth Circuit has not addressed the question. Other circuits have declined to presume irreparable harm based on a contract clause. *See Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) (finding that contractual concession of irreparable harm is an

---

[2] The clause provides as follows:

**7.** <u>**Irreparable Harm in the Event of Breach**</u>. The parties agree that breach of Paragraphs 1 or 2 of this Agreement would cause Riverside irreparable harm for which no adequate remedy exists at law. Therefore, in the event a breach occurs, the Parties agree that Riverside will be entitled to obtain injunctive relief restraining and enjoining Mercer and Hubbard from continuing to breach those terms, and compelling Mercer and Hubbard to strictly comply with those terms, in addition to all other remedies. No bond shall be required.

ORDER – 12

"insufficient prop"); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004); *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987). Other district courts have reached the same conclusion. *Valeo Intellectual Prop., Inc. v. Data Depth Corp.,* 368 F. Supp. 2d 1121, 1128 n.5 (W.D. Wash. 2005); *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001); *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998). After *Winter* and its emphasis on the demonstration of actual harm, 555 U.S. at 22, the court queries whether it can give any weight to such a clause. At best, the clause is evidence that at the time of the Settlement Agreement, the parties predicted that breaches of Paragraphs 1 and 2 would be of the sort that would cause irreparable harm. That prediction is perhaps entitled to some weight, but the court holds that it does not relieve Riverside of its obligation to demonstrate irreparable harm.

Riverside's evidence of irreparable harm is meager. According to Riverside, Mercer's previous practice exams were so similar to the CogAT that Riverside's customers perceived that the integrity of the exam had been compromised. The sole evidence of this harm, however, comes in a single paragraph of the declaration of Tracey Barrett, a Riverside vice-president. She declares that "Riverside received complaints from several school district customers regarding extensive similarities between [Mercer's] practice exams and Riverside's CogAT exams." Barrett Decl. ¶ 4. The sole example she provides is that an unnamed person or persons at Virginia's Fairfax County Public School District "complained that Mercer's practice exams were strikingly similar to Riverside's exams," and that it "belie[ved] that Mercer's practice exams defeated the integrity of Riverside's CogAT exams." *Id.* Riverside provided no evidence from anyone at the Fairfax school district or any other school district. Ms. Barrett states that "several" customers had similar complaints, but there is no evidence of how many, and there is no evidence of how many customers had no complaints. Moreover, the evidence shows that Mercer has continued to publish the practice exams it submitted in 2009, with

ORDER – 13

minimal changes due to Riverside's objections. Despite the widespread availability of those exams for at least several years, Riverside has no evidence that it has lost a single customer because of the belief that the Mercer practice exams compromise the integrity of the CogAT.

The court is not convinced that vague evidence that a few customers had complaints is a demonstration of irreparable harm. Riverside received complaints from a few customers based on Mercer's prior practice exams, but did not lose any customers. In light of that evidence, Riverside's current fears of serious damage to its reputation and loss of market share among its standardized testing competitors are speculative at best. This is particularly true where there is no meaningful assessment in the record of the similarities between Mercer's new materials and any version of the CogAT.

Moreover, the court declines to make Mercer responsible for the unsupported fears of a few Riverside customers. In reaching this conclusion, the court notes that Riverside has repeatedly accused Ms. Hubbard of copying from its exams or obtaining information from someone who has copied Riverside's exams. The evidence in the record does not support this accusation. Ms. Barrett, the sole Riverside representative to provide evidence, raised only nebulous concerns about the security of the CogAT, without any specific evidence of Ms. Hubbard's wrongdoing. Barrett Decl. ¶ 7. At oral argument, Riverside's counsel insisted that Riverside's "expert test prep specialists" have concluded that Mercer's exams are so similar to Riverside's test that the similarity cannot be a coincidence. Riverside's counsel's hearsay assertions are not evidence. Not a single one of Riverside's "expert test prep specialists" offered any evidence on the record in this case. As previously noted, Riverside's July 8 letter to Mercer contains comparisons of a few Riverside questions and answers to a few Mercer questions in answers. Riverside does not reveal what version of the CogAT its questions were selected from or whether it has publicly revealed those questions or similar ones in the past. These comparisons

ORDER – 14

provide no basis for a conclusion that Mercer has copied any non-public Riverside question.

In contrast to Riverside's vague accusations, Ms. Hubbard provided a detailed description of the process she uses to create Mercer's practice questions and practice exams. She used CogAT material available on Riverside's website and other websites to create her first practice test, and did so without leaving her home. Hubbard Decl. ¶ 6. She has used the same process to create subsequent tests. *Id.* ¶ 15. Using the same materials, her nine-year-old children were able to create some practice questions that she used. *Id.* ¶ 9. Ms. Hubbard has never seen a CogAT exam. *Id.* ¶ 14. Although her initial impetus to create her exams sprang from her desire to help her children prepare for the test, they never actually took the CogAT. *Id.* Ms. Hubbard specifically denies having ever received inside information about Riverside's tests. *Id.* ¶ 14. She created Mercer's CogAT Form 7 practice materials in a six-week period after she learned in April 2011 that Mercer would release Form 7. *Id.* ¶ 29. She learned this information from Riverside's own website, which included information about the new format as well as sample questions. *Id.* ¶ 28.

In addition, the court observes that no fact finder could infer copying because Mercer entered the Settlement Agreement or agreed to remove certain questions from its practice materials at Riverside's request. The record reflects that Mercer has consistently decided to avoid expensive disputes with Riverside where doing so would not compromise its business. This is a sensible strategy for a small business defending itself against a well-heeled competitor. It is not evidence of wrongdoing.

To summarize, Riverside has presented no evidence that would lead the court to believe its assertions that Ms. Hubbard copied its exams. If, for reasons unknown to the court, a few Riverside customers have concluded that the CogAT is not secure, that is not the result of Ms. Hubbard's conduct. It is instead pure speculation. It is unfortunate for

ORDER – 15

Riverside if it suffers harm as a result of its customers' speculation, but there is no reason to hold Mercer accountable for that harm.

**D.      The Balance of Hardships Tips in Mercer's Favor.**

Riverside faces the possibility that some customers will continue to assume, without evidence, that Mercer obtained inside information about the CogAT.  Mercer, on the other hand, faces an injunction that would effectively put it out of the CogAT preparation business.  The injunction would prevent Mercer from publishing any new CogAT material for an indefinite period of time, and it would do so at a critical time, when Mercer needs to publish new material to correspond to Riverside's new test.  The court thus balances the possibility that the speculative fear of a few of Riverside's customers will cause it to lose business and the elimination of a significant portion of Mercer's business.  That balance sharply favors Mercer.

The court also notes that the balance of equities, to the extent it remains relevant, favors Mercer as well.  Riverside received Mercer's recent submission on June 10.  If Riverside wished to decline to review the submission because of its allegedly improper format, it could informed Mercer on June 11.  Instead, it waited until July 8.  It offers no compelling explanation for the delay.  By July 12, Mercer had told Riverside that it intended to proceed with publication.  By July 19, Mercer had announced an August 1 publication date.  Mercer waited until two court days before August 1 to file its motion for preliminary injunction.  These are the actions of a party working to undermine a competitor's business, not the actions of a party attempting in good faith to resolve a dispute over the meaning of a settlement agreement.

**E.      The Public Interest Favors Mercer.**

To the extent that the public interest is implicated in this case at all, it favors Mercer.  Riverside seeks to suppress Mercer's speech, which is rarely in the public interest.  It is never in the public interest where there is no evidence that the speech

ORDER – 16

infringes any copyright, presents false or misleading information, or is the result of anyone's wrongful conduct. Riverside touts only the public's interest in enforcing settlement agreements. As the court has already held, however, Riverside is not likely to prevail in proving any breach of the Settlement Agreement.

## IV. CONCLUSION

For the reasons stated above, the court DENIES Riverside's motion for a temporary restraining order or preliminary injunction. Dkt. # 6.

The parties filed almost all of the documents in the record under seal. At yesterday's hearing, they informed the court that they had done so out of an abundance of caution, and that they now agreed that it was unnecessary to seal any of the documents, with one exception. That exception is Exhibit E to the declaration of Riverside's counsel, which is his July 8 letter stating Riverside's position on Mercer's June 10 submission. According to counsel, that letter includes a few actual CogAT questions, and those questions should not be made public. Mercer raised no objection. The court has cited this exhibit several times in this order, and thus will not permit it to be sealed in its entirety. The court will, however, permit Riverside to redact the questions themselves from the letter. Accordingly, the court orders the clerk to UNSEAL every document that has been sealed in this litigation with the exception of the document at Dkt. # 7-5. That document shall remain under seal. Riverside shall file a redacted version of that document no later than August 11. The court directs the clerk to TERMINATE Riverside's motions related to sealing documents. Dkt. ## 2, 4.

DATED this 4th day of August, 2011.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 17