HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE RIVERSIDE PUBLISHING COMPANY,

    Plaintiff,

v.

MERCER PUBLISHING LLC, et al.,

    Defendants.

CASE NO. C11-1249RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion of Plaintiff The Riverside Publishing Company ("Riverside") to compel arbitration (Dkt. # 22) and the motion of Defendants Mercer Publishing LLC, and Rachel and Michael Hubbard to enjoin arbitration (Dkt. # 24).  Except where necessary, the court will refer to Defendants collectively as "Mercer."  Although Mercer requested oral argument in opposition to Riverside's motion, the court finds oral argument unnecessary.  For the reasons stated below, the court DENIES Riverside's motion and GRANTS Mercer's motion.

## II.  BACKGROUND

The court first addressed this dispute in an August 4, 2011 order denying Riverside's motion for a temporary restraining order and preliminary injunction.  Just seven days prior, Riverside had filed this suit against Mercer for breach of a November 2009 Settlement Agreement.

ORDER – 1

The Settlement Agreement resolved a prior lawsuit in which Riverside accused Mercer of infringing its copyright in the CogAT, a standardized test used nationwide to evaluate primary school children. Mercer, a company based in the home of Ms. Hubbard, its principal and sole employee, sells publications to assist parents preparing their children for the CogAT. Those materials include questions-and-answers that Ms. Hubbard crafts to simulate the types of questions-and-answers children might encounter on the CogAT.

The Settlement Agreement established a process by which Riverside would review Mercer's existing CogAT materials as well as any future materials. This past summer, as Mercer prepared to publish a new set of study materials corresponding to a new version of the CogAT, Mercer submitted the questions to be incorporated in those new materials for Riverside's review. The court examined the parties' conduct thereafter in its prior order, and does not repeat its discussion here. It suffices to observe that the parties had sharply contrasting views about whether Mercer complied with the Settlement Agreement. With Mercer set to publish its new study materials on August 2, Riverside on July 28 filed this lawsuit and its accompanying motion for injunctive relief to stop that publication. Mercer agreed to delay publication until the court resolved the motion. The court heard argument from the parties on August 3.

The court denied Riverside's motion the next day. The court found that Riverside was unlikely to succeed on the merits of its claim for breach of the Settlement Agreement. The court disagreed with Riverside's interpretation of the Settlement Agreement, and thus found Riverside unlikely to succeed on its claim that Mercer had breached it. The court also concluded that even if Mercer had breached the Settlement Agreement, that breach was likely immaterial. Aug. 4 Ord. at 11 ("Riverside has, at best, a modest chance of success on the merits of its claim that Mercer breached the Settlement

ORDER – 2

1  Agreement."). The court then determined that Riverside had not proven it would suffer
2  irreparable harm absent an injunction. *Id.* at 11-16.
3     Five days later, Riverside made an arbitration demand. It invoked an arbitration
4  clause in the Settlement Agreement that provided as follows:

> **Controlling Law/Choice of Forum/Arbitration.** This Agreement and all questions relating to its validity, interpretation, performance, and inducement shall be governed by and construed, interpreted, and enforced with the substantive laws of the State of Washington without reference to conflict of law principles. All such questions will be decided in binding arbitration decided solely by O. Yale Lewis, Jr., acting as arbitrator. Notwithstanding the previous sentence, Riverside may seek injunctive relief pursuant to Paragraph 7 of this Agreement by filing suit in any Washington court of competent jurisdiction.

Agreement ¶ 9. Riverside's complaint in arbitration repeated the only two claims of its complaint in this action: that Mercer had breached the Settlement Agreement and that Mercer had breached its duty of good faith and fair dealing arising from the Settlement Agreement. The complaint in arbitration added one claim, requesting that the arbitrator appoint a "Neutral" to consider certain disputes in accordance with the Settlement Agreement. Among other things, Riverside's prayer for relief in the arbitration demand requested that the arbitrator issue precisely the same injunctive relief that Riverside requested in its complaint in this action. *Compare* Arb. Compl. Prayer ¶ 6, *with* Compl. Prayer ¶ 2.

Nine days after Riverside filed its demand, the parties filed these competing motions regarding the arbitrability of this dispute.

### III.   ANALYSIS

The sole disputed question before the court is whether Riverside waived its right to demand arbitration of its claims. But for waiver, the Federal Arbitration Act ("FAA") (9 U.S.C. §§ 1-16) and its "liberal federal policy favoring arbitration agreements" would require the court to compel arbitration of Riverside's claims. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Mercer does not contest that

ORDER – 3

Riverside's claims fall within the scope of the Settlement Agreement's arbitration clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). Mercer also does not contend that the Settlement Agreement is invalid or unenforceable. 9 U.S.C. § 2 (declaring arbitration agreements enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract").

There are three prerequisites to a conclusion that a party waived its arbitration right:

> (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.

*Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). Mercer, as the party arguing for waiver, bears a "heavy burden of proof." *Id.*; *see also Cone Mem. Hosp.*, 460 U.S. at 24-25 ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Despite the Settlement Agreement's general Washington choice-of-law clause, federal law alone governs the court's waiver inquiry. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002).

### 1. Knowledge of an Arbitration Right

There is no dispute that Riverside knew that the Settlement Agreement gave it a right to compel arbitration. Riverside negotiated the Settlement Agreement with Mercer, including the Agreement's arbitration clause. Riverside does not argue that it was unaware of its arbitration right.

ORDER – 4

### 2. Actions Inconsistent with an Arbitration Right

When it filed this lawsuit and sought injunctive relief, Riverside took acts that were inconsistent with its arbitration right. In explaining that conclusion, the court hastens to note that neither filing a lawsuit covering an arbitrable dispute nor seeking injunctive relief in that suit are *per se* inconsistent with the right to compel arbitration. Many courts have held that a party seeking to arbitrate a dispute nonetheless has the right to seek injunctive relief from a court. That right, however, is a right to seek "equitable relief *in aid of arbitration*." *Toyo Tire Holdings of Am., Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) (emphasis added). In *Toyo Tire* (and numerous cases like it), courts have observed that injunctive relief from a court is sometimes necessary to preserve the status quo pending arbitration. *Id.* Arbitrators sometimes lack the power to issue injunctive relief. Even where they possess that power, a party typically cannot obtain injunctive relief from an arbitrator as quickly as it can from a court. *Id.* at 981. Thus, courts permit parties to seek injunctive relief in order to effectuate the "congressional desire to enforce arbitration agreements . . . ." *Id.* at 980 (quoting *PMS Dist. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641-42 (9th Cir. 1988)).

But Riverside did not file suit or seek injunctive relief *in aid of arbitration*. Instead, it filed suit and requested injunctive relief without acknowledging the arbitrability of its claims. Riverside's complaint is wholly silent as to the parties' arbitration agreement. It requests actual damages. It demands a jury trial. These acts alone are sufficient to satisfy the first two prongs of the waiver-of-arbitration inquiry. *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) ("The first two prongs of this test are satisfied by [the putative plaintiff-in-arbitration]'s state court complaint . . . requesting a jury trial and $16 million in damages."). Moreover, when Riverside moved for injunctive relief, it did not seek to preserve the status quo pending resolution of its claims by the arbitrator. Its proposed preliminary injunction demanded

ORDER – 5

relief "through the time of *trial* unless and until the parties complete the review process [set forth in the] Settlement Agreement." Prop. Ord. at 4 (emphasis added).[1] Nowhere in Riverside's injunction motion or its reply to Mercer's opposition to that motion did Riverside mention its right to arbitrate, much less indicate its intent to exercise that right. The first evidence of Riverside's desire to invoke its arbitration right came when it submitted its arbitration demand five days after the court denied its injunction motion.

Riverside correctly notes that the Settlement Agreement expressly permits it to seek injunctive relief from a court. The Agreement does not, however, permit Riverside to take acts inconsistent with its arbitration right. The Settlement Agreement's authorization of injunctive relief does not bear on whether Riverside waived the right to arbitrate its claims.

Before moving to the third prong of the waiver inquiry, the court rejects Riverside's assertion that its mention of the need for a "Neutral" to review Mercer's submission of CogAT preparation questions in advance of their publication was somehow an invocation of its arbitration right. The Settlement Agreement provides that if the parties are unable to resolve disputes over whether particular Mercer sample questions-and-answers are too similar to actual CogAT questions-and-answers, they must submit their disputes to a "Neutral." Agreement ¶ 1(f). The Settlement Agreement sets minimum qualifications for the Neutral, and allows the parties to submit the names of proposed Neutrals to O. Yale Lewis in the event they are unable to agree. *Id.* ¶ 3. It is not clear whether the Neutral's decisions could bind the parties. It is clear, however, that the Neutral's sole power was to compare the parties' test questions-and-answers to determine if they were sufficiently similar. *Id.* ¶ 1(f). The Neutral had no power to address the Settlement Agreement or "questions relating to its validity, interpretation,

---

[1] Riverside inadvertently submitted two copies of a proposed order granting its motion to seal documents, omitting to file its proposed preliminary injunction. Dkt. ## 4-1, 6-1, 6-2. Riverside did, however, submit a courtesy copy of its proposed preliminary injunction to the court. The court directs the clerk to file it on the docket concurrently with this order.

ORDER – 6

performance, and inducement . . . ." *Id.* ¶ 9.  Those questions, which are the heart of Riverside's claims, were reserved solely for the arbitrator, Mr. Lewis.  *Id.*  For that reason, when Riverside argued in its reply brief in support of its injunction motion that a Neutral, not the court, should decide whether Mercer's new questions-and-answers were sufficiently similar to Riverside's CogAT questions-and-answers (Dkt. # 15 at 3), it did not make an argument that implicated its arbitration rights.  The Settlement Agreement's provisions for a Neutral and its provisions for an arbitrator are distinct and unrelated.

### 3. Prejudice

The court now considers whether Mercer suffered prejudice as a result of Riverside's acts inconsistent with its arbitration right.  The Ninth Circuit has not, so far as the court is aware, given a comprehensive statement of how to evaluate claims of prejudice in this context.  That court has considered the duration and substantive extent of litigation in court as an indicator of prejudice.  *E.g.*, *United Computer Sys.*, 298 F.3d at 765 (finding no prejudice where plaintiff's complaint "never got past the pleading stage" and "district court proceedings involved primarily a motion to dismiss on the basis of res judicata"); *Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 799 (9th Cir. 1992) (finding prejudice where suit proceeding through discovery and monetary judgment).  It has also considered delay in proceedings, costs and expenses resulting from litigation, and loss of witnesses and evidence as a result of delay.  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005).  The Ninth Circuit has not, so far as the court is aware, limited the scope of a court's prejudice inquiry.  *Cf. Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992) (identifying six non-exclusive factors guiding prejudice inquiry: timeliness of effort to compel arbitration, extent to which party seeking arbitration has contested opposing party's claims on the merits, whether the party seeking arbitration informed its adversary of intent to pursue

ORDER – 7

arbitration, the extent of non-merits motion practice, acquiescence to a court's pretrial orders, and the extent of discovery).

Mercer has demonstrated prejudice as a result of Riverside's litigation activity. The court reaches this conclusion even though the delay that Riverside caused was minimal. Less than two weeks passed between Riverside's suit and injunction motion and its arbitration demand. It also mitigates in Riverside's favor that the parties did not conduct discovery. Mercer did, however, incur substantial expense defending against the injunction motion, and it is apparent that Riverside intends to make Mercer repeat precisely the same costly defense before the arbitrator. Indeed, it intends to seek the same injunction that this court denied.[2] This supports a finding of prejudice.

The court finds additional support for Mercer's claim of prejudice arising from strong evidence that Mercer seeks arbitration primarily to avoid litigating before a court that has already taken a dim view of the merits of its claims.[3] As noted, Riverside made no mention of its right to arbitrate until after the court's order denying injunctive relief. Riverside's attempt to abruptly exit the litigation it chose to enter deprives Mercer of the fruits of its success in this litigation. This is another form of prejudice.

In explaining that conclusion, the court observes that Riverside is not the first litigant to come to court seeking injunctive relief only to attempt to flee for arbitration when it was disappointed with the court's ruling. In *Conwest Resources, Inc. v. Playtime Novelties, Inc.*, No. C06-5304 SBA, 2007 U.S. Dist. LEXIS 35585, at *5 (N.D. Cal. May 1, 2007), the court considered an arbitration demand that came 11 days after the court

---

[2] Although the Settlement Agreement provides for arbitration, there is no indication that the parties agreed on the rules governing that arbitration. Riverside's arbitration demand shows that it believes that the arbitrator can issue an injunction in this dispute. The court has no need to determine whether Riverside is correct.

[3] Mercer argues repeatedly that the court has already ruled in its favor on Riverside's claims. Mercer is mistaken. A court's ruling on a preliminary injunction is, by its terms, preliminary. The court did not resolve Riverside's claims, it merely assessed its likelihood of success to be low.

ORDER – 8

denied the plaintiff's preliminary injunction motion. In considering the defendant's claim of prejudice, the court stated as follows:

> What may be fairly inferred from the context of [plaintiff]'s repeated refusals to arbitrate, and then seeking arbitration after an unfavorable ruling on its preliminary injunction motion, is that [plaintiff] is seeking an alternative forum sensing an adverse ruling in this one. Such use of arbitration as a method of forum shopping would be prejudicial to [defendant].

*Id.* at *14-15. The court cited decisions from other circuit courts taking a dim view of litigants who seek arbitration after an unfavorable result in litigation. *Id.* at *15-16 (citing *St. Mary's Med. Ctr. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992) and *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)); *see also Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112 MHP, 2010 U.S. Dist. LEXIS 79683, at *14 n.3 (N.D. Cal. Aug. 5, 2010) ("The court will not permit defendant to use a motion to compel arbitration as a means of 'forum shopping.'"). The court also found that the time and resources invested in the preliminary injunction motion would need to be duplicated in arbitration, thus prejudicing the defendant. *Conwest Resources*, 2007 U.S. Dist . LEXIS 35585, at *17. Although neither *Conwest Resources* nor the cases it cited bind the court, the court finds prejudice arising from Riverside's forum shopping.

Mercer suffered another form of prejudice; it did not merely enjoy the denial of Riverside's injunction motion, it made critical business decisions as a result. Buoyed by the court's ruling, it published its new CogAT test materials. Had the court, for example, denied Riverside's injunction motion because it made a compelling case on the merits of its claims but failed to show irreparable harm, Mercer might well have decided not to publish. Instead, armed with a favorable ruling from the only forum in which Riverside had sought a determination of its claims, Mercer took actions that could expose it to greater damage claims. To erase that ruling at Riverside's whim would plainly prejudice Mercer.

ORDER – 9

Although Riverside's litigation efforts were not as long-lived as those in other cases,[4] the court concludes that Mercer has suffered prejudice as a result. Riverside seeks to force Mercer to duplicate the resources it has already expended in this litigation. It seeks to deprive Mercer of the benefit of the favorable results it obtained as a result of those efforts. It seeks to expose it to damages for decisions it made in light of the court's ruling. The court finds clear prejudice to Mercer.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to enjoin arbitration (Dkt. # 24) and DENIES Riverside's motion to compel arbitration (Dkt. # 22).

DATED this 4th day of November, 2011.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

---

[4] Just days after Riverside filed its arbitration demand, the Third Circuit rejected an arbitration demand from a plaintiff who had lost its bid for a preliminary injunction. *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444 (3d Cir. Aug. 17, 2011). Although it is in many respects factually distinguishable from this case, the *Gray Holdco* decision is, so far as the court is aware, the most thorough examination by a federal appeals court of the issue before this court.

ORDER – 10