HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE RIVERSIDE PUBLISHING
COMPANY,

           Plaintiff,

   v.

MERCER PUBLISHING LLC, et al.,

           Defendants.

CASE NO. C11-1249RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the resolution of a series of motions the court consolidated into a motion calendar on November 26, 2012.  The principal motions comprising that calendar are Defendants' motion to compel discovery and Plaintiff's motion for partial summary judgment.  The remaining motions request that the court seal various pieces of evidence on which the parties relied.  Plaintiff requested oral argument, Defendants did not.  The court finds oral argument unnecessary.  For the reasons stated herein, the court DENIES the motion to compel and GRANTS in part and DENIES in part the motion for partial summary judgment.  The clerk shall TERMINATE the November 26 motion calendar.  This order concludes with instructions to the parties to submit a joint statement of their views on an efficient means to resolve this case and another case between essentially the same parties (No. C12-2170RAJ).

ORDER – 1

## II.  BACKGROUND

To understand the current motions as well as the fractured posture of this litigation, it is necessary to review the history of litigation between these parties.

Plaintiff Riverside Publishing Company publishes standardized tests for young children, including the CogAT.  Defendant Mercer Publishing LLC (along with its principals, Defendants Rachel and Michael Hubbard) publish various study guides to help parents prepare their children for the CogAT.  The study guides include practice exams that simulate the CogAT as well as standalone practice questions.

Almost four years ago, Riverside sued Mercer for copyright infringement in this District.  Case No. C09-796RSL.  It contended that Mercer's then-existing practice tests infringed Riverside's copyrights on questions on Form 5 and Form 6 of the CogAT.  That case resolved quickly, with the parties entering into a Settlement Agreement in November 2009.  The Settlement Agreement included a provision requiring Mercer to submit future CogAT practice materials to Riverside for a pre-publication review process.  The Settlement Agreement gave Riverside an opportunity to object to any Mercer questions "that Riverside in good faith believe[d] infringe[d] its copyrights . . . ."  Settlement Agreement ¶ 1.b.

In June 2011, Mercer submitted new CogAT practice material to Riverside for review.  Riverside was just about to implement Form 7 of the CogAT, and Mercer had prepared new practice questions accordingly.  Riverside contended that Mercer had not submitted the practice material in the proper format, and demanded additional time to complete its review.  Mercer rejected the demand and moved ahead with plans to publish its new material.

Riverside filed this suit in July 2011, claiming breach of the Settlement Agreement and the implied covenant of good faith and fair dealing.  Riverside's claims did not depend on any similarity between its copyrighted questions and Mercer's new practice questions, they depended on its contention that Mercer had improperly submitted all of

ORDER – 2

the questions in standalone format, instead of organizing them into practice tests. Riverside immediately moved for a temporary restraining order and preliminary injunction that would have prevented Mercer from publishing its new CogAT material. The court denied that motion in an August 4, 2011 order.  Dkt. # 18.  Among other things, the court found that Mercer was unlikely to succeed on its claims because the Settlement Agreement did not appear to require Mercer to submit practice questions in the format that Riverside preferred.

A few days later, Mercer struck back with counterclaims.  It contended that Riverside had breached Mercer's copyrights, that it had breached the Settlement Agreement, and that Riverside had unlawfully interfered with both its business expectancies and its contractual relationships.

In late September, the court entered a scheduling order, setting this case for trial on January 22, 2013.  Dkt. # 32.  The scheduling order set the close of discovery for September 24, 2012, and required all discovery related motions to be noted no later than the preceding Friday (September 21, 2012).  On that schedule, any motion to compel discovery would have to be filed no later than September 6, 2012.  *See* Local Rules W.D. Wash. LCR 7(d).

Riverside then asked the court to compel arbitration of the parties' disputes arising out of the Settlement Agreement.  The court denied that motion on November 4, 2011, ruling that Riverside had waived its right to arbitrate.  *Riverside v. Mercer*, 829 F. Supp. 2d 1017 (W.D. Wash. 2011).  Riverside appealed.  The court takes judicial notice of the docket in that appeal (9th Cir. No. 11-35960), in which the Ninth Circuit has set oral argument for June 2013.

Riverside asked the court to stay litigation on all Settlement-Agreement-related claims pending appeal.  Mercer did not oppose that relief, and the court entered a limited

ORDER – 3

1    stay on April 3, 2012.  Dkt. # 44.  As of that date, the only active claims in this litigation

2    were Mercer's counterclaims for copyright infringement and unlawful interference.

3            The parties began discovery and conducted it without seeking the court's

4    involvement.  Even when Riverside filed for bankruptcy protection in May (emerging in

5    July 2012), the parties did not ask the court to intervene.  In August 2012, they jointly

6    requested that the court grant a one-month extension of all pending case deadlines *except*

7    the trial date.  Their stipulation did not reveal any discovery disputes.  The court denied

8    that request without prejudice, explaining that the parties could not delay the deadline for

9    filing dispositive motions while preserving the trial date.  The parties made no other

10   requests for relief from the scheduling order.  The September 24, 2012 discovery

11   deadline passed without any party requesting further relief from the court.

12           On October 19, 2012, almost a month after the close of discovery and more than

13   six weeks after the last day on which it could have timely filed a motion to compel,

14   Mercer filed a motion to compel discovery.  The motion contended that Riverside had not

15   provided complete responses to Mercer's requests for production of documents ("RFPs").

16   The motion also explained that when Mercer decided that the RFP responses were

17   incomplete, it declined to take four depositions of Riverside personnel set for early

18   October.  Because Riverside refused to reschedule the depositions, Mercer's motion to

19   compel also asked the court to order the additional depositions.[1]

20           Riverside filed its motion for partial summary judgment on October 24, 2012, the

21   last date on which it could have done so in accordance with the scheduling order.  It

22   asked for summary judgment in its favor on the three Mercer counterclaims that the court

23   had not stayed.  It contended that Mercer could not, as a matter of law, succeed on its

24   copyright infringement claims because Riverside had created the allegedly infringing test

---

[1] Thirteen days after its initial motion to compel, Mercer filed a "supplement" to the motion that raised new claims of discovery impropriety.  Riverside asked the court to strike this untimely submission.  Although the court agrees that the submission was untimely, it need not strike it in light of its disposition today.

ORDER – 4

questions before Mercer created the questions that Riverside had allegedly copied. Riverside contended that the unlawful interference claims failed for a variety of reasons, but principally because the *Noerr-Pennington* doctrine shielded it from liability arising from its actions in connection with this lawsuit.

Mercer responded to the summary judgment motion with a request that the court delay it, in accordance with Federal Rule of Civil Procedure 56(d), until it could obtain discovery.  The Rule 56(d) request made no attempt to explain how additional discovery was necessary to respond to the summary judgment motion.  Mercer also filed an opposition to the summary judgment motion.

Just after Riverside filed its summary judgment motion, Mercer asked the court to permit it to amend its counterclaims to state new copyright infringement claims against Riverside and its parent company.  It cited evidence it acquired during discovery that Riverside had distributed Mercer's copyrighted test questions in September 2011 to Dr. David Lohman, the University of Iowa professor who assists Riverside in developing the CogAT.  It also had learned that Riverside's parent company had obtained from the United States Copyright Office the deposit copies that Mercer had provided in conjunction with its copyright registrations, then unlawfully distributed those copies to Mercer's competitors in 2012.  After the court's November 26 order, Mercer chose to bring its new allegations as a new lawsuit in this District.  The new suit has been reassigned to this court.  No. C12-2170RAJ.  In light of the new lawsuit (which names Riverside, its parent company, and Dr. Lohman as defendants), Mercer withdrew its request to amend its counterclaims in this case.  Those defendants filed a motion to dismiss the second case for failure to state a claim (and for lack of personal jurisdiction over Dr. Lohman).  The motion to dismiss just became ripe for the court's consideration.

With this summary in mind, the court turns to its analysis of the motion to compel, the motion for partial summary judgment, and the parties' four motions to seal.

ORDER – 5

### III.  ANALYSIS

**A.     Motion to Compel**

Mercer's motion to compel is untimely, and the court denies it for that reason. The court recognizes that the parties made agreements to conduct discovery beyond the discovery deadline.  The court recognizes that discovery in this action was delayed, at least somewhat, by a brief stay arising out of Riverside's bankruptcy.  The court recognizes that Mercer tried to resolve its discovery disputes with Riverside amicably, and accepted Riverside's assurances that discovery would ultimately come.  Nonetheless, with the discovery deadline (and the deadline for filing discovery motions) approaching, Mercer chose to risk conducting discovery beyond the deadline rather than seeking court intervention.  It made that choice at its own peril.  It is because of that choice, for example, that Mercer did not obtain the third-party discovery that allegedly reveals Riverside's withholding of responsive documents until well after the discovery deadline.

Nothing in the record adequately explains why Mercer did not alert the court to potential or actual discovery disputes sooner or why it filed its motion to compel seven weeks after the deadline to do so.  When the parties jointly asked for a one-month discovery extension, the court denied the request only because it would be impossible to preserve the trial date.  For reasons it does not explain, Mercer did not thereafter renew a request to continue the discovery deadline.  The court would perhaps excuse a minor delay in bringing a discovery motion.  It will not excuse a seven-week delay, especially where the record reveals no reason for it.

One aspect of Mercer's motion to compel troubles the court.  It contains evidence that Riverside failed to produce documents that were plainly responsive to the RFPs. Mercer obtained those responsive documents via subpoenas to third parties.  At least some of Riverside's failure to produce documents likely owes to its migration to a new email system in 2009.  Riverside authored many of the documents, however, after 2009. As to those, the court cannot say whether Riverside's failure to produce was the result of

ORDER – 6

1    intentional misconduct or a less-than-diligent search for responsive documents.  Mercer

2    harps on Riverside's refusal to sign a verification of the completeness of its responses to

3    the RFPs.  It ignores that whereas the Federal Rules require a party to verify its

4    interrogatory responses, nothing requires a party to verify its responses to RFPs.

5    *Compare* Fed. R. Civ. P. 33(b)(5) *with* Fed. R. Civ. P. 34(b)(2).  Nonetheless, because of

6    the indications that Riverside failed to produce plainly responsive documents, the court

7    will not prevent Mercer, at trial, from asking Riverside witnesses about what, if anything,

8    they did to search for documents relevant to this case.  Depending on the results of that

9    inquiry, the court may consider instructing the jury to take one or more adverse

10   inferences against Riverside.

11   **B.     Motion for Partial Summary Judgment**

12          On a motion for summary judgment, the court must draw all inferences from the

13   admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred*

14   *Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate

15   where there is no genuine issue of material fact and the moving party is entitled to a

16   judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show

17   the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

18   323 (1986).  The opposing party must then show a genuine issue of fact for trial.

19   *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

20   opposing party must present probative evidence to support its claim or defense.  *Intel*

21   *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The

22   court defers to neither party in resolving purely legal questions.  *See Bendixen v.*

23   *Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

24          **1.      Copyright Infringement**

25          Mercer contends that Riverside infringed its copyrighted test questions.  A claim

26   of copyright infringement requires a plaintiff to prove that it has a valid copyright on the

27

28   ORDER – 7

work in question and that the defendant copied the work. *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990);  Except in the rare case where there is direct evidence that the defendant copied the plaintiff's work, a plaintiff proves copying by showing that the defendant had access to the plaintiff's work and that the two works are substantially similar. *Id.*; *see also Spry Fox, LLC v. LOLApps, Inc.*, No. C12-147RAJ, 2012 U.S. Dist. LEXIS 153863, at *8 (W.D. Wash. Sept. 18, 2012).

Mercer has failed to provide any evidence to counter proof that Riverside authored all allegedly infringing questions prior to the date it had access to Mercer's copyrighted material.  Mercer does not contend that Riverside had access to the copyrighted test questions at issue before 2009, when it submitted material for Riverside's review in the wake of the Settlement Agreement.  It would be hard pressed to do so, because its copyright registration certificates claim no authorship date earlier than 2009.  The only evidence as to specific test questions that Riverside allegedly copied comes in Mercer's counsel's July 2011 letter to Riverside's counsel, in which counsel cites five allegedly copied questions.  In response to those allegations, Riverside produced proof from its computer databases that it authored each of the five challenged test questions in 2008, before it had access to the Mercer questions that it allegedly copied.  Mercer offers no evidence to contradict Riverside's evidence.[2]  It also does not point to any additional test questions that Riverside allegedly copied.  On this evidence, no jury could conclude that Riverside infringed any Mercer copyright.

---

[2] There is evidence that in 2007, Ms. Hubbard (doing business at the time as "Mercer Publications") sold a "Gifted Program Entry Exam Practice Test I."  Riverside's parent company sent her a cease-and-desist letter in 2007, contending that the practice test infringed Riverside's copyrights in the CogAT.  Although the practice test bears a "© 2007" notation, there is no evidence that Mercer has registered a copyright for anything it authored prior to 2009.  More importantly, Mercer does not even allege (much less offer evidence) that its current copyright infringement allegations are based on material that Riverside copied from the 2007 practice test.

ORDER – 8

### 2.      Tortious Interference

Mercer asserts that Riverside unlawfully interfered with both its contractual relationships and its business expectancies.  To succeed on those claims, Mercer must prove the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Medical Bureau*, 930 P.2d 288, 300 (Wash. 1997).  Although *Leingang* and other precedent suggest that the interference must cause a "breach or termination of the relationship or expectancy," the same precedent clarifies that any "injury" to a contract or business expectancy resulting from the interference will suffice. *Id.*; *Schmerer v. Darcy*, 910 P.2d 498, 502 (Wash. Ct. App. 1996); *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989) ("[A] cause of action for tortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships.")

Preliminarily, the court finds no evidence of unlawful interference with a contractual relationship.  The only contractual relationships to which Mercer points are its sales of test preparation materials to its customers.  There is no evidence that Riverside's conduct has interfered with anyone's performance of a sale contract.  Instead, Mercer contends that Riverside has taken actions intending to prevent Mercer from making future sales of its materials, which is a claim of interference with a business expectancy.

There is some evidence supporting each element of tortious interference with business expectancies.  Mercer had valid expectancies arising not only from its expectation that it could make new sales to its former customers, but also from its

ORDER – 9

expectation that it could make new sales to new customers.  Riverside knew of these business expectancies.[3]  Its contention that it did not know of any specific prospective customer is unavailing.  Business expectancies need not be so specific.  There is evidence that Riverside's use of the Settlement Agreement in an effort to delay or prevent publication of Mercer's CogAT materials injured Mercer's business expectancies.  From the outset of this suit, Ms. Hubbard contended that she was forced to divert her time and resources to responding to Riverside's baseless assertions that her questions were too similar to Riverside's, rather than attend to other Mercer business.  In other words, there is evidence that Riverside injured Mercer's business expectancies by (at a minimum) making it more expensive to bring them to fruition.  Those expenses, along with Ms. Hubbard's evidence of emotional distress arising from Riverside's actions, are sufficient to raise at least a factual dispute over damages.

The court has yet to address the requirement that the tortious interference be for an improper purpose or by improper means.  That issue requires more attention.  Riverside contends that it has done no more than exercise its legal rights, and that exercising legal rights is never improper.  That contention is directly relevant to Mercer's interference claim, because "[e]xercising in good faith one's legal interests is not improper interference."  *Leingang*, 930 P.2d at 300.  And, putting aside Washington law, Riverside invokes the First Amendment-rooted *Noerr-Pennington* doctrine, which immunizes defendants from liability for conduct in the course of litigation.  *See Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (explaining doctrine's origin in First Amendment's Petition Clause).  The *Noerr-Pennington* doctrine applies not only to litigation, but to all "[c]onduct incidental to a lawsuit," including pre-suit demand letters. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *see*

---

[3] In her deposition, Ms. Hubbard contended that she also had expectancies of selling Mercer or developing new Mercer projects.  The court agrees with Riverside that there is no evidence that it knew of these expectancies.

ORDER – 10

1    *also Sosa*, 437 F.3d at 936-937 (discussing scope of protection to litigation-related

2    conduct).  Although the doctrine developed as a canon of statutory interpretation in

3    litigation over statutory violations, *Sosa*, 437 F.3d at 930, it also applies to at least some

4    common-law claims, including state-law unlawful interference claims.  *Theme*

5    *Promotions*, 546 F.3d at 1007.

6            Just as Washington law requires a "good faith" exercise of legal rights to avoid an

7    unlawful interference claim, the *Noerr-Pennington* doctrine contains a "sham exception."

8    *Kottle v. NW Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).  That exception applies

9    to a single lawsuit that is both "objectively baseless" and, subjectively, an attempt to

10   interfere with the plaintiff's business.  *Id.*  It also applies to a series of lawsuits "brought

11   pursuant to a policy of starting legal proceedings without regard to the merits and for the

12   purpose of injuring a market rival."  *Id.* (quoting *USS-POSCO Indus. v. Contra Costa*

13   *Cty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 811 (9th Cir. 1994)).  Finally, it

14   applies when the conduct the plaintiff targets "consists of making intentional

15   misrepresentations to [a] court."  *Kottle*, 146 F.3d at 1060.

16           Before considering whether the *Noerr-Pennington* doctrine limits or bars Mercer's

17   tortious interference claim, the court examines what Riverside conduct is at issue in this

18   litigation.  When Mercer filed its counterclaims in August 2011, this litigation was in its

19   infancy.  Mercer had, just a few months prior, submitted a collection of practice questions

20   to Riverside for review in accordance with the Settlement Agreement.  Riverside had

21   raised numerous objections to the questions.  Ms. Hubbard declared, for example, that

22   Riverside objected to 104 of 134 questions in a particular subject area, even though

23   Riverside had already approved some of those questions in its 2009 review of Mercer's

24   then-existing practice exams.  Putting aside issues of similarity among the questions,

25   Riverside also insisted that submitting a collection of questions that were not organized

26   into practice exams was a violation of the Settlement Agreement.  It was that contention

27

28   ORDER – 11

1    (along with Riverside's contention that the volume of questions necessitated additional

2    time for review) that led to this lawsuit.

3          More than a year later, Mercer expanded its allegations to include Riverside's

4    conduct it discovered after it filed its counterclaims.  It alleged that Riverside had

5    unlawfully distributed Mercer's copyrighted materials to Dr. Lohman.  It also alleged that

6    Riverside's parent company had unlawfully distributed copies of Mercer's copyright

7    deposit copies to Mercer's competitors.[4]  Finally, the court is aware that Riverside has

8    recently filed a lawsuit in King County Superior Court challenging a new batch of Mercer

9    test questions.[5]  This suggests that Riverside and Mercer have once again clashed over

10   the review process set forth in the Settlement Agreement.  Each of these relatively recent

11   events is the subject of litigation in another forum.  So far as the court is aware, none of

12   that litigation includes a claim from Mercer that Riverside's recent conduct constitutes

13   tortious interference.  Although Mercer asked for leave to state new copyright

14   counterclaims, it has never asked to amend its counterclaims to encompass new tortious

15   conduct.

16         For those reasons, the court finds that Mercer's tortious interference claim is

17   confined to Riverside's actions in 2011 to enforce the Settlement Agreement with respect

18   to the new CogAT materials that Mercer ultimately published in August 2011.  In the

19   court's view, that conduct falls into two categories.  First, Riverside attempted to prevent

20   Mercer from publishing new test questions by contending that Mercer did not follow the

21   Settlement Agreement's procedures for pre-publication review.  Second, Riverside

22

23

24   [4] Mercer sued each of these competitors in this District.  The Honorable James L. Robart is
     presiding over those cases, one of which has ended in a settlement.  *See* Case Nos. C12-188JLR,
25   C12-550JLR.

26   [5] The court is aware of the King County Superior Court litigation because Mercer unsuccessfully
     asked this court to enjoin that litigation.  Feb. 21, 2013 ord. (Dkt. # 105) (denying motion for
27   temporary restraining order).

28   ORDER – 12

attempted to coerce Mercer to change or withdraw test questions by contending they were too similar to Riverside's questions.

The court agrees with Riverside that, as a matter of law, the *Noerr-Pennington* doctrine shields it from liability arising from its interpretation of the procedural aspects of the Settlement Agreement.  Although this court did not agree with Riverside's contention that the Settlement Agreement required Mercer to submit its CogAT practice questions organized into practice exams, the court finds that Riverside's interpretation was not "objectively baseless" within the meaning of the sham exception to the *Noerr-Pennington* doctrine.  *See Theme Promotions*, 546 F.3d at 1007 (explaining that a suit is "objectively baseless" when "no reasonable litigant could reasonably expect success on the merits"). Because the suit was not objectively baseless, the court need not consider whether Riverside brought it for an improper purpose.  *Id.*  As to the "serial litigation" aspect of the sham exception, there is no evidence that Riverside has a policy of bringing suits against Mercer to enforce the procedural aspects of the Settlement Agreement without regard to their merits.  The court also finds the fraud-on-the-court aspect of the sham exception inapplicable to Riverside's invocation of the procedural aspects of the Settlement Agreement.  The court acknowledges that Mercer has provided evidence that Riverside either exaggerated or misrepresented the nature of a single customer's concerns over Mercer's role in undermining the validity of the CogAT.  Even construing that evidence against Riverside, the court finds that it would not bring this lawsuit within the scope of the fraud-on-the-court aspect of the sham litigation exception.

There are disputes of fact, however, arising from Riverside's use of the Settlement Agreement to coerce Mercer to change questions that it believes are too similar to its own questions.  The Settlement Agreement permits Riverside to object to the substance of a question in only one circumstance: when "Riverside in good faith believes [that a question] infringes its copyrights . . . ."  Settlement Agreement ¶ 1.b.  There is evidence

ORDER – 13

that Riverside neither had a good faith belief that any Mercer test question infringed its copyrights nor that it even attempted to form such a belief. As the court has noted in its discussion of Mercer's copyright claims, copyright infringement requires access to the copyrighted work. As the court explained in its injunction order, there was no evidence (at least at the time that Riverside filed suit) that Mercer had ever had access to a CogAT exam or any other Riverside copyrighted material. Moreover, evidence Mercer uncovered during discovery supports the inference that at least some of the people Riverside employed to review Mercer's test questions in 2011 were either ignorant of copyright infringement standards or were never instructed to follow them. Moreover, at least some of those people told Riverside that there were not sufficient similarities between the questions. On this record, it is possible to conclude that Mercer did not invoke the Settlement Agreement to vindicate a good faith claim of copyright infringement, but rather for the purpose of burdening Mercer. Similarly, because the evidence suggests that Riverside used the Settlement Agreement in a similar fashion in its recent King County lawsuit, it is possible that Riverside has a policy of using the Settlement Agreement to burden Mercer without regard to the merits of the copyright infringement allegations necessary to use the Agreement to force Mercer to change its questions. Finally, it is at least possible that Riverside has misrepresented evidence about Mercer's access to its copyrighted materials, which might satisfy the fraud-on-the-court aspect of the sham litigation exception. For these reasons, it is possible that Riverside's use of the Settlement Agreement to force Mercer to make changes to its CogAT materials falls within the scope of the sham exception, and, for similar reasons, may constitute the use of improper means for the purpose of interfering with Mercer's business expectancies. The court accordingly declines to grant summary judgment on this aspect of Mercer's tortious interference claim.

ORDER – 14

### 3.      Mercer's Rule 56(d) Request

Rule 56(d) permits a party to resist a summary judgment motion by "show[ing] by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition" to the motion.  Fed. R. Civ. P. 56(d) (emphasis added).  A party may invoke Rule 56(d) to ask the court to deny the summary judgment motion outright, or delay consideration of it while the party completes necessary discovery.

As the language the court has italicized suggests, a party relying on Rule 56(d) must offer specific reasons that it needs additional discovery to oppose a summary judgment motion.  The affidavit must state "the specific facts it hopes to elicit from further discovery," and that "the sought-after facts are essential to oppose summary judgment."  *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  A court has discretion to deny a Rule 56(d) request that does not meet these requirements.  *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006) (discussing Rule 56(f), the predecessor to Rule 56(d)).

Mercer's Rule 56(d) request falls well short.  Mercer provided no affidavit or declaration at all.  It asks the court to overlook this, and rely instead on the declaration it submitted in connection with its motion to compel, or an after-filed declaration it submitted in reply to Riverside's opposition to its Rule 56(d) request.  Even if the court were willing to rely on these declarations, however, none of them are sufficiently specific.  With respect to its copyright infringement allegations, Mercer offers no indication at all that further discovery might lead it to evidence that would contradict Riverside's evidence that it authored the infringing test questions prior to seeing any Mercer materials containing such questions.  With respect to its tortious interference allegations, it offers no indication that further discovery would make it any more able to oppose the crux of Riverside's motion, which was that its conduct in this case was protected litigation activity.  In short, Mercer's Rule 56(d) request gives the court no

ORDER – 15

reason to think its disposition of Riverside's summary judgment motion would be any different if the court gave Mercer time to conduct additional discovery.

## C.    Motions to Seal

The parties filed four motions to seal in connection with these motions.  Three of them were "necessary" only because the party filing them did so to respect the opposing party's designation of a document as confidential during discovery.  In each of those three motions (Dkt. ## 58, 85, 89), the opposing party did not respond to the motion, and thus failed to overcome the strong presumption of public access to the court's files.[6]  *See* Local Rules W.D. Wash. LCR 5(g).  The court accordingly denies each of those motions, and will direct the clerk to unseal each of the documents that were the subject of those motions.

Mercer did not file any of the documents it sought to seal.  It provided copies of those documents to the court and to Riverside, but filed none of them.  Within seven days of this order, Mercer shall file each of the documents that was the subject of its two motions to seal.  Dkt. ## 58, 85.

The only motion to seal that warrants additional discussion is a motion from Riverside.  Dkt. # 61.  Like the motions mentioned above, it targets some documents solely for the purpose of preserving whatever objections Mercer might have to their publication.  Mercer did not respond to the motion, and the court will direct the clerk to unseal those documents.

The motion, however, also targets documents that reveal the essence of the dispute underlying Mercer's copyright infringement counterclaim.  Riverside asks the court to seal the July 28, 2011 letter from Mercer's counsel to Riverside's counsel that contains the five examples of CogAT questions that Riverside allegedly copied from Mercer.  As

---

[6] The court wonders why the parties did not obviate the need for these three motions to seal by conferring in advance over the need to seal the documents.  The court notes that this District recently amended its local rules to require parties to meet and confer before filing a motion to seal.  Local Rules W.D. Wash. LCR 5(g)(1)(A), (3)(A).

ORDER – 16

the court has noted, these five questions comprise Mercer's only specific allegations of copyright infringement.  The crux of Riverside's motion for summary judgment on the copyright counterclaim is that it created those five questions before it had any access to Mercer's questions.  Riverside nonetheless asks the court to seal much of the declaration of Emmett Cartwright, its manager of product development, who provides the evidence from Riverside's computer systems that confirms the creation date of these text questions.  It similarly asks the court to seal most of the declaration of Dr. Lohman, the author of those questions, who verifies the creation dates.

Riverside falls short of overcoming the presumption of public access to the court's files.  It is one thing for Riverside to contend that its CogAT questions (which number in the thousands, at least) are collectively confidential.  It is another thing to contend that it cannot publicize the content of even five questions when those five questions are the crux of a dispositive motion.  Riverside demonstrates no harm that would come from the publication of these five questions and the evidence surrounding their authorship.  The public, by contrast, would scarcely be able to understand either Mercer's infringement allegations or Riverside's attack on them without reviewing this evidence.  For that reason, the court declines to seal any of these materials.

## IV.  CONCLUSION

For the reasons previously stated, the court declines to compel Riverside to provide additional discovery, and grants summary judgment in Riverside's favor against Mercer's copyright counterclaims and its unlawful interference counterclaims, except for a claim of tortious interference with Mercer's business expectancies based on Riverside's misuse of the substantive aspects of the Settlement Agreement.  The court directs the clerk to TERMINATE the November 26, 2012 motion calendar.

To implement its rulings on the parties' motions to seal, the court orders as follows:

ORDER – 17

1) Mercer shall file all of the documents that are the subject of its motions to seal within seven days of this order.

2) The clerk shall UNSEAL every document that was a subject of the parties' motions to seal: Dkt. ## 63-66, 92.

The litigation between these parties is currently fractured. The parties have stayed all claims based on the Settlement Agreement pending Riverside's appeal. The sole remaining claim in this case that is not subject to the stay is the tortious interference claim that the court described above. It is not clear whether the parties believe that claim (which would appear to arise from Mercer's use of the Settlement Agreement) is subject to the stay. In addition, Mercer's new copyright infringement claims against Riverside, its parent company, and Dr. Lohman are pending in a separate case that does not yet have a trial date or case schedule.

No later than April 17, 2013, the parties shall submit a joint statement regarding their views on an efficient means to bring both of these cases to a close. Unless a party offers a compelling reason, the court will not conduct separate trials or otherwise resolve these cases in piecemeal fashion. The court prefers that the parties craft an agreed procedure for resolving the cases, but if they are unable to do so, they shall succinctly state their differences in the joint statement.

DATED this 3rd day of April, 2013.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 18